**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF N    EW JERSEY

DONALD WELLS,                         :
                                                    Civil Action No. 05-5583 (RBK)
              Petitioner,      :

              v.               :        **OPINION**

EDWARD F. REILLY, JR., et al.,:

              Respondents.     :


**APPEARANCES:**

Petitioner pro se                Counsel for Respondents
Donald Wells                     Paul A. Blaine
F.C.I. Fairton                   Asst. U.S. Attorney
P.O. Box 420                     401 Market Street
Fairton, NJ 08320                4th Floor
                                 Camden, NJ 08101


**KUGLER**, District Judge

     Petitioner Donald Wells, a prisoner currently confined at

the Federal Correctional Institution at Fairton, New Jersey, has

submitted a petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2241.[1]  The respondents are United States Parole

_____

     [1] Section 2241 provides in relevant part:

     (a) Writs of habeas corpus may be granted by the
     Supreme Court, any justice thereof, the district courts
     and any circuit judge within their respective
     jurisdictions.
     (c) The writ of habeas corpus shall not extend to a
     prisoner unless-- ... (3) He is in custody in violation
     of the Constitution or laws or treaties of the United
     States ... .

Commissioners Edward F. Reilly, Jr., Michael J. Gains, and John Simpson.

## I.   <u>BACKGROUND</u>

On January 14, 1984, Petitioner stabbed his girlfriend to death during an argument.  On November 16, 1984, the District of Columbia Superior Court sentenced Petitioner to a custodial term of 7 to 21 years for manslaughter while armed.  Petitioner was paroled from his custodial sentence by the District of Columbia Board of Parole on July 31, 1991, to remain under parole supervision until June 2, 2005.

On December 16, 1997, the Board of Parole issued a warrant charging Petitioner with violations of the conditions of his parole.  On December 18, 2002, the U.S. Parole Commission issued a supplement to the warrant, adding the additional charge of "Law Violation: Assault with a Dangerous Weapon," based upon Petitioner's arrest for assault with a deadly weapon.  Petitioner was subsequently convicted pursuant to a guilty plea of simple assault in the District of Columbia Superior Court.  Petitioner was sentenced to a suspended 180 day custodial term and was placed on probation for one year.

Petitioner was arrested on the USPC warrant on February 7, 2001.  At Petitioner's revocation hearing, the victim of the assault, Petitioner's wife, testified that Petitioner had struck her in the head and other parts of her upper body with a table

leg, causing bruises and contusions to her head.  She testified that she did not require medical attention.  There was additional evidence that, as the victim was attempting to escape, Petitioner grabbed her and choked her with his hands, stating "If you leave me bitch, I'll kill you, You will be dead if you leave me." (Resp. Ex. 7 at 5.)

On July 3, 2001, the USPC revoked Petitioner's parole, finding that he had violated the conditions of his release by failing to report as directed, use of dangerous and habit-forming drugs, failing to notify his Community Supervision Officer of a change in employment, and committing an assault with a deadly weapon.  He was continued to a presumptive parole date after service of 96 months (September 20, 2008).  (Resp. Ex. 8, 9.) This was in excess of the customary range of 36-48 months indicated by the then-applicable guidelines.  The USPC stated that a decision above the guidelines was warranted for the following reasons:

> You are a more serious risk than indicated by the guidelines in that, while on parole for taking the life of your former girlfriend whom you stabbed to death during an argument, you committed a similar assault which involved your using your fists to strike your current girlfriend in the face, and then used a wooden table leg to strike her in the head some four times. As she attempted to escape your assault, you grabbed her and began choking her and told her as you were choking her that you would kill her if she left you. In the light of your past behavior, the Commission regards this statement as indicating your actual intent rather than a mere threat.

> Your propensity to engage in repeated violent acts of
> violence against females during fits of rage indicates
> that you are too great a danger to return to the
> community except following the service of substantial
> additional prison time.

(Resp. Ex. 8.)

Following Petitioner's first interim hearing on September
16, 2001, the USPC ordered no change.  (Resp. Ex. 10, 11.)
Following an interim hearing on August 15, 2005, due to superior
program achievement, the USPC advanced the reparole date for
Petitioner by six months.  (Resp. Ex. 12, 13.)

Petitioner contends that use of the parole guidelines in
effect in 1987 or 1997, rather than those in effect at the time
of Petitioner's underlying crime in 1984, violates the Ex Post
Facto clause.  Petitioner also asserts that the USPC violated his
due process rights by going outside the guidelines without giving
Petitioner specific reasons different from those that describe
the offense for which his parole was revoked and that were relied
upon in determining his offense severity rating.  Finally,
Petitioner asserts that the reparole set off date which was twice
the maximum of the regular guidelines violates Petitioner's
rights under the Eighth Amendment to be free from cruel and
unusual punishment.[2]

---

[2] Petitioner also asserts a violation of his equal
protection rights, but fails to explain the nature of the alleged
violation.  This Court can discern no equal protection violation
from the circumstances described by Petitioner.

4

II.  <u>ANALYSIS</u>

A.   <u>The Due Process and Eighth Amendment Claims</u>

Petitioner previously brought a petition for writ of habeas
corpus pursuant to § 2241 while he was confined at the United
States Penitentiary in Lewisburg, Pennsylvania.  <u>See</u> <u>Wells v.</u>
<u>Reilly</u>, Civil Action No. 03-1700 (M.D. Pa.).  In that action, he
alleged that the imposition of a 96-month reparole set off
violated his rights to be free from cruel and unusual punishment
under the Eighth Amendment and to due process under the Fifth
Amendment.  The U.S. District Court for the Middle District of
Pennsylvania found that the USPC met the requirement of "good
cause" for exceeding the guidelines range and did not abuse its
discretion.  The court also found that the USPC issued a written
determination including an understandable statement of the facts
relied upon and setting forth rational reasons for the departure.
The court also rejected Petitioner's argument that the USPC had
improperly used the same factors in scoring a prisoner pursuant
to the guidelines and as an aggravating factor justifying a
decision above the guidelines.  The district court denied the
petition.  <u>Wells v. Reilly</u>, Civil Action No. 03-1700 (M.D. Pa.
July 1, 2004).  (Resp. Ex. 14.)  Although Petitioner appealed the
decision, he did not challenge the district court's
determinations with respect to the due process and Eighth

5

Amendment issues.  See Wells v. Reilly, No. 04-2983 (3d Cir. Jan. 25, 2005).  (Resp. Ex. 14.)

Pursuant to 28 U.S.C. § 2244:

> No circuit or district judge shall be required to entertain an application for a writ of habeas corpus to inquire into the detention of a person pursuant to a judgment of a court of the United States if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for a writ of habeas corpus, except as provided in section 2255.

28 U.S.C. § 2244(a).  As Petitioner's due process and Eighth Amendment claims have been considered on the merits and rejected previously by the U.S. District Court for the Middle District of Pennsylvania, this Court will not entertain the claims.  See, e.g., Sanders v. United States, 373 U.S. 1, 15 (1963) (court should decline to entertain successive petition raising the same grounds as those asserted in a previous petition denied on the merits, unless the "ends of justice" would be served by reaching merits of successive petition).  See also Schlup v. Delo, 513 U.S. 298, 318-19 (1995) (same).

B.   The Ex Post Facto Claim

Article I, Sections 9 and 10, of the United States Constitution, prohibit the federal and state governments from passing any "ex post facto Law."  In Collins v. Youngblood, 497 U.S. 37, 41 (1990), the Supreme Court reaffirmed that the Ex Post Facto Clause incorporates "a term of art with an established meaning at the time of the framing of the Constitution."

Specifically, the Clause is aimed at laws that "retroactively alter the definition of crimes or increase the punishment for criminal acts." Id. at 43 (citations omitted). The Supreme Court has noted that "[r]etroactive changes in laws governing parole of prisoners, in some instances, may be violative of this precept." Garner v. Jones, 529 U.S. 244, 250 (2000) (citations omitted). "Whether retroactive application of a particular change in parole law respects the prohibition on ex post facto legislation is often a question of particular difficulty when the discretion vested in a parole board is taken into account." Id.

Subsumed within this analysis is the question whether a particular administrative rule must be considered a "law" subject to the Ex Post Facto Clause. See Forman v. McCall, 776 F.2d 1156, 1157-58 (3d Cir. 1985), cert. denied, 476 U.S. 1119 (1986) ("Forman II"). "[I]f applied without substantial flexibility, the parole guidelines constitute 'laws' within the meaning of the ex post facto clause." Forman v. McCall, 709 F.2d 852, 862 (3d Cir. 1983) ("Forman I").

Petitioner has presented to this Court no evidence regarding the degree of flexibility with which the reparole guidelines are applied. Accordingly, he has failed to establish that the challenged guidelines are "laws" within the meaning of the Ex Post Facto Clause. See, e.g., Lawary v. United States Parole Commission, 2000 WL 1277306 (S.D.N.Y. Sept. 8, 2000) (USPC

7

reparole guidelines are not "laws" for ex post facto purposes).
In any event, he has failed to establish the second requirement,
that application of the amended regulations produces a sufficient
risk of increasing the measure of punishment attached to his
crimes.

In 1995, the Supreme Court considered the constitutionality
of a California parole amendment that had no effect on the
standards for fixing a prisoner's initial date of eligibility for
parole or for determining his suitability for parole, but only
permitted the Board of Prison Terms to decrease the <u>frequency</u> of
parole suitability rehearings, for prisoners who have been
convicted of more than one offense involving the taking of a
life, from annual hearings up to hearings every three years.  In
addition, the California law permitted requests for earlier
reconsideration based upon a change in circumstances.  <u>See
California Dept. of Corrections v. Morales</u>, 514 U.S. 499 (1995).
Rejecting the argument that the California amendment violated the
Ex Post Facto Clause, the Supreme Court emphasized that "the
question of what legislative adjustments 'will be held to be of
sufficient moment to transgress the constitutional prohibition'
<u>must</u> be a matter of 'degree.'  In evaluating the
constitutionality of [an amendment to parole law], we must
determine whether it produces a sufficient risk of increasing the

measure of punishment attached to the covered crimes." Morales, 514 U.S. at 509 (citations omitted) (emphasis in original).

Five years later, the Supreme Court revisited this issue in reviewing a Georgia statute that altered the parole reconsideration period, for prisoners serving life sentences, from three years to "at least every eight years." See Garner, 529 U.S. at 247 (reversing and remanding for further consideration lower court determination that amendment was necessarily an ex post facto violation based, in part, upon lower court's refusal to consider Parole Board's internal policies regarding implementation of the amendment). The Court considered the amendment within the whole context of Georgia's parole system, noting particularly the "broad discretion" the Parole Board possessed in determining whether an inmate should receive parole. Id. at 252-53.

> The presence of discretion does not displace the protections of the Ex Post Facto Clause, however. The danger that legislatures might disfavor certain persons after the fact is present even in the parole context, and the Court has stated that the Ex Post Facto Clause guards against such abuse. On the other hand, to the extent there inheres in ex post facto doctrine some idea of actual or constructive notice to the criminal before commission of the offense of the penalty for the transgression, we can say with some assurance that where parole is concerned discretion, by its very definition, is subject to changes in the manner in which it is informed and then exercised. The idea of discretion is that it has the capacity, and the obligation, to change and adapt based on experience. New insights into the accuracy of predictions about the offense and the risk of recidivism consequent upon the

> offender's release, along with a complex of other
> factors, will inform parole decisions.

Garner, 529 U.S. at 253 (citations omitted).  The Court noted
that the amended reconsideration statute granted the Parole Board
discretion as to how often to set an inmate's reconsideration
hearing, with a maximum of eight years, and that the Parole
Board's policies permitted expedited reconsideration in the event
of a change of circumstances or receipt of new information.  Id.
at 254.  "The policy enables the Board to put its resources to
better use, to ensure that those prisoners who should receive
parole come to its attention.  By concentrating its efforts on
those cases identified as having a good possibility of early
release, the Board's Rules might result in the release of some
prisoners earlier than would have been the case otherwise."  Id.
Remanding for further proceedings, the Supreme Court emphasized
that a prisoner challenging a parole amendment on ex post facto
grounds must show that "as applied to his own sentence the law
created a significant risk of increasing his punishment.  This
remains the issue in the case, though the general operation of
the ... parole system may produce relevant evidence and inform
further analysis on the point."  529 U.S. at 255.

Here, at the time Petitioner committed his original offense,
the District of Columbia Code contained the following provision
regarding parole:

> Whenever it shall appear to the Board of Parole that there is a reasonable probability that a prisoner will live and remain at liberty without violating the law, that his release is not incompatible with the welfare of society, and that he has served the minimum sentence ... the Board may authorize his release on parole.

D.C. Code § 24-204(a) (recodified at § 24-404(a)).

In 1987, the D.C. Board of Parole first adopted regulations respecting parole.

> In accordance with D.C. Code, § 24-204 the Board shall be authorized to release a prisoner on parole in its discretion after he or she has served the minimum number of term or terms of the sentence imposed or after he has served one-third (1/3) of the term or terms for which he or she was sentenced, as the case may be, if the following criteria are met:
>
> (a) The prisoner has observed substantially the rules of the institution;
> (b) There is reasonable probability that the prisoner will live and remain at liberty without violating the law; and
> (c) In the opinion of the Board, the release is not incompatible with the welfare of society.

D.C. Mun. Regs. title 28 § 200.1 (1987).  The new regulations established a scoring system to guide the Board's parole decisions, assigning to each parole candidate a "Salient Factor Score," providing for the addition and subtraction of points for various pre- and post-incarceration factors, and providing that candidates with certain low total point scores "shall be granted parole."  D.C. Mun. Regs. title 28 § 204.1 et seq.  In addition, however, the regulations permitted the Board to deviate from the outcome suggested by the total point score "in unusual circumstances."  D.C. Mun. Regs, title 28 § 204.22.  Appendix 2-1

11

listed six reasons for denying parole despite a low total point
score:

> Repeated failure under parole supervision,
> Current offense involves on-going criminal behavior,
> Lengthy history of criminally related alcohol abuse,
> History of repetitive sophisticated criminal behavior,
> Unusually extensive and serious prior record (at least
> five felony conviction), and
> Unusual cruelty to victims.

Appendix 2-1.  Appendix 2-1 also included categories for "Other"
and "Other change in circumstances."  The Board supplemented this
appendix with an "Addendum to Board Order" which set forth four
additional factors that could justify deviating from the
numerical guidelines: (1) the offender has engaged in repeated or
extremely serious negative institutional behavior, (2) the
offender has a lengthy history of criminally-related substance
abuse, (3) the offender had the opportunity, but made little or
no effort toward rehabilitation or preparation for remaining
crime-free if released to the community, (4) the offender needs
program and/or rehabilitation services to minimize risk to the
community when actually released to parole.

Both the District of Columbia Court of Appeals and the U.S.
Court of Appeals for the District of Columbia have rejected the
argument that the 1987 regulations created a liberty interest in
parole.  See Ellis v. District of Columbia, 84 F.3d 1413, 1419
(D.C. Cir. 1996) ("'Other' is scarcely constraining language.  It
suggests the following interpretation: under the regulations, a

12

prisoner with a low total point score shall be granted parole unless the Board, in the exercise of its discretion, believes there is some other reason for not granting him parole."); McRae v. Hyman, 667 A.2d 1356, 1357 (D.C. 1995) ("The District's parole scheme confers discretion to grant or deny parole and the scoring system creates no liberty interest overriding the exercise of that discretion.").

The same regulatory process that established the scoring system specified an outer limit in terms of time for the scheduling of the next parole hearing.  These regulations provided for two "ordinarily" applicable set-offs when the Board denies parole: for a person serving a sentence of less than five years, reconsideration should ordinarily occur within 6 months; for a person serving a sentence of five years or more, reconsideration should ordinarily occur within twelve months. D.C. Mun. Regs. title 28 §§ 104.1, 104.2 (1987).  The regulations further clarified, however, that such a reconsideration date was not mandatory.

> Notwithstanding any other provision of this section, the Board may order a parole reconsideration date it determines to be appropriate.

D.C. Mun. Regs. title 28 § 104.11 (1987).  Thus, under the 1987 regulations, "[t]he decision when to schedule a new parole hearing after an inmate has been denied is ... a discretionary one."  White v. Hyman, 647 A.2d 1175, 1179 (D.C. 1994).

In April 1992, the Board established guidelines "to ensure consistency and equity in the establishment of parole reconsideration dates."  Board of Parole Policy Guidelines § II (April 27, 1992) (reproduced in <u>Hall v. Henderson</u>, 672 A.2d 1047, 1051 (D.C. 1996)).  The 1992 guidelines set forth a number of "aggravating" and "mitigating" factors to assist the Board in deciding whether to schedule a set-off of longer or shorter duration than those prescribed by regulation.

> The aggravating factors considered by the Board include but are not limited to the following:
>
> a.  There has been repeated failure under any form of community supervision (probation, parole, bail, diversion program).
> b.  The instant offense involved ongoing criminal behavior or leadership role in an organized criminal venture (e.g., an organized drug distribution operation).
> c.  There is a lengthy history of criminally-related alcohol and/or substance abuse.
> d.  There is a history of repetitive sophisticated, assaultive, or fraudulent criminal behavior (including the current offense).
> e.  There is an unusually extensive or serious prior record (at least five felony convictions).
> f.  The instant offense involved unusual cruelty to victim(s) or involved especially vulnerable victims (e.g., children or elderly victims of assaultive or fraudulent behavior).
> g.  There has been repeated or extremely serious negative institutional behavior.
> h.  There has been opportunity but little/no effort made toward rehabilitation/preparation for remaining crime-free if returned to the community.
> i.  The offender poses a serious threat to self or others and adequate resources are not available in the community.

Policy Guidelines § VI(A)(2).

14

The mitigating factors considered by the Board include but are not limited to the following:

a.  There has been exceptional program achievement.
b.  There is a record of exclusively trivial offenses.
c.  There has been a substantial crime-free period since the last offense.
d.  There has been a substantial previous period in custody on other sentence(s) or the prisoner faces a substantial period of time on additional committed sentences.
e.  There has been substantial cooperation with the Government that has not been otherwise rewarded.
f.  There has been a change in the availability of community resources leading to better parole prognosis or the prisoner has exceptional community resources available.
g.  There is a poor medical prognosis.
h.  There have been other changes in circumstances.
i.  The offender has put forth maximum effort to participate in assigned programs, but opportunities for programming were not available.

Policy Guidelines § VI(A)(3).

The District of Columbia Court of Appeals again rejected the argument that the Guidelines created a liberty interest in parole deserving of due process protections.

While the Guidelines, therefore, do require the Board to have some basis for deviating from the prescribed set-offs, they plainly do not place "substantive limitations" on the Board's discretion to schedule a set-off date outside those that the regulations prescribe.  The Guidelines undoubtedly reflect, rather than limit, the discretion that the District's municipal regulations and parole statute already vest in the Board's set-off determinations, and in its parole decisions generally.

Hall, 672 A.2d at 1053-54 (citations omitted).

Under the National Capital Revitalization and Self-Government Improvement Act of 1997, Public Law No. 105-33,

15

§ 11231(a)(1), 111 Stat. 712, 745, effective August 5, 1998, Congress transferred the authority of the D.C. Parole Board to the U.S. Parole Commission.  The D.C. Parole Board was abolished and the USPC assumed responsibility for making parole determinations for D.C. Code offenders.  See D.C. Code § 24-131 (2001).  The USPC promulgated new regulations to guide parole decisions.  The initial regulations were effective from August 5, 1998, to December 3, 2000, and were then revised.  See 28 C.F.R. § 2.80.  Reparole decisions now are made pursuant to the regulations contained at 28 C.F.R. § 2.81, which differentiates between prisoners serving a new, parolable D.C. Code sentence and those who have committed a non-D.C. Code offense.  "If the prisoner is eligible for parole on a new D.C. Code felony sentence that has been aggregated with the prisoner's parole violation term, the Commission shall make a decision to grant or deny parole on the basis of the aggregate sentence, and in accordance with the guidelines at § 2.80."  28 C.F.R. § 2.81(b).

The guidelines at § 2.80 and related provisions provide a mechanism for assigning to each offender a "Salient Factor Score," reflecting the prisoner's record of criminal conduct, and for accounting for the severity of the relevant offense.  A grid reflects the usual sentence to be served based upon these two characteristics.  In addition, the guidelines take into account both pre- and post-incarceration factors.  Decisions outside the

16

guidelines may be made "where warranted."  28 C.F.R. § 2.80(b).
Compare Fletcher v. Reilly, 433 F.3d 867 (D.C. Cir. 2006)
(finding that amended reparole regulations applicable to
prisoners whose parole was revoked for a non-D.C. Code offense do
not take into account post-incarceration behavior; therefore,
prisoner was entitled to a searching comparison of two regimes to
determine whether new regulations created a significant risk that
prisoner would be subjected to a lengthier incarceration under
new regime).

     Here, Petitioner's reparole determination was made pursuant
to the regulations at § 2.80 and related provisions applicable to
D.C. Code offenders, which take into account both pre- and post-
incarceration factors.[3]  Petitioner has not provided any evidence
to suggest that he has been disadvantaged by the USPC's use of
the current reparole guidelines to deny him reparole.  There is
no evidence, or even argument, to suggest that the USPC has
exercised its discretion any differently than it would have under
D.C. Code § 24-204(a), in effect when Petitioner committed his
offense in 1984.[4]  Moreover, the record establishes that the USPC

_____

     [3] Petitioner does not challenge the scoring which produced
the guidelines set off range of 36 to 48 months.

     [4] Courts are not in uniform agreement as to whether, in the
case of parole revocation, it is unconstitutional to apply a
statute that alters, to the defendant's disadvantage, the terms
under which eligibility for reparole is calculated, if that
statute was enacted after the date of the underlying offense,
even though the act upon which revocation is based occurred after

did take into account Petitioner's favorable institutional behavior and adjusted his rehearing date.   Accordingly, he has failed to establish any entitlement to the writ of habeas corpus.   Cf. Richardson v. Pennsylvania Board of Probation and Parole, 423 F.3d 282 (3d Cir. 2005) (prisoner must show that he was individually disadvantaged by retroactive application of Pennsylvania parole amendments).   See also Brown v. Williamson, 2006 WL 1896166 (M.D. Pa. 2006) (no ex post facto violation in application of § 2.80 to D.C. Code offender whose underlying crime was committed in 1980).

III.   CONCLUSION

For the reasons set forth above, the Petition must be denied.   An appropriate order follows.

s/Robert B. Kugler
Robert B. Kugler
United States District Judge

Dated: December 1, 2006

---

the enactment of the statute.   Compare United States v. Paskow, 11 F.3d 873 (9th Cir. 1993) (Ex Post Facto Clause violated when a defendant's eligibility for release is adversely affected under a parole statute that was not in effect at the time of the underlying crime but was adopted before the act for which parole is revoked) with U.S. v. McGregor, 866 F.Supp. 215 (E.D. Pa. 1994) (no ex post facto violation) and U.S. v. Reese, 71 F.3d 582 (6th Cir. 1995) (same), cert. denied, 518 U.S. 1007 (1996).   This Court need not decide this issue, however, as Petitioner has failed to establish any likelihood of an increased term of imprisonment when the current regime is compared to any of the schemes in place since the time he committed the underlying crime.